Good morning, Your Honors, and may it please the Court. I am David Gabor. I'm here for the appellant for City Pacific. Before I start, I'd like to thank the Court for extending the time for hearing. I was ill. I'd like to thank counsel as well. I appreciate that. I want to make three short points about the estoppel issue that we're here today. Can I begin by asking why this is being treated primarily as an equitable estoppel case? It seems very odd to me. I mean, ordinarily, when we're trying to figure out why an earlier litigation precludes a later litigation, we call it either some form of claim or issue of preclusion. There are obviously estoppel elements in there. I understand there are some issues about how race judicata and issue of preclusion would apply here, but does the fact that the first litigation was an arbitration have anything to do with this? Why are we in the middle of that equitable estoppel? Well, Your Honor, it's an interesting question. The answer is there were two separate summary judgments. The first was a summary judgment on race judicata. That was denied. I understand that, but I want to know here, now, why are we arguing principally about equitable estoppel? Because that's where the district court went off, is what you're telling me. Correct, Your Honor. I mean, that's... But why was it even... It was litigated that way because of the notion that race judicata couldn't apply because of California law of declaratory judgments? Yes, the Micogen case, Your Honor. And what happened was, on denial of the initial summary judgment for race judicata, it was actually the district court itself that suggested that the parties raise the estoppel issue. And that's how it came up, just as a matter of course. It was actually at the request of the district court. Are there other cases in which the equitable estoppel was simply about litigation and nothing else? Well, Your Honor, not really that we've found. I mean, I think the interesting thing here is that typically in equitable estoppel, you have a case where one side has superior knowledge to the other. In this case, the contract was on the table for all the parties to understand it. All the parties had attorneys. All the parties had appraisers. And I think, as you may be getting... But the estoppel here is an estoppel with regard to what was done and said in the arbitration. Right. All right. Go ahead. It essentially was, in our view, Your Honor, an attempt to relitigate an arbitration that should not have been relitigated. It was incredibly inequitable to assert the estoppel in that particular circumstance. And again, typically, you don't see it arise in these circumstances where the parties were on the table. There were appraisers involved at the arbitration level. And what we essentially saw was an attempt to relitigate the arbitration. In this case, what had happened was at the 20-year mark, there was an issue of how CPI, the Consumer Price Index portion of the lease, would apply to the It would go along as it's always gone along. Why wasn't the CPI already accounted for in the fact that you were going to measure at the 20-year mark the current value of the lease property? Well, interestingly, that's how the contract worked. The contract was very clear that the minimum rent, which is not the same as market rent, by the way, is set in a certain way through... Right. It would be virtually 75 percent of market rent. It would be 75 percent. Right. And then you keep your CPI add-on to basically even it out over the years. Why? That's how the contract was written. Well, it certainly added on forward. We understand that part, right? It's added on forward, but you want to add it on backwards. You keep using the term rollover. I don't know what that means, but I gather what you want to do is you want to take all the accumulated CPIs for the 20-year period and put that into what you're starting from. Right. It essentially... That's just not logical. I mean, because the fire market value should have adjusted for whatever consumer price index increases there were in the meanwhile. Right. Well, we suspected that would come up as an issue, and in fact, the way this contract was designed was that there was a 25 percent discount on the minimum rent which is essentially only part of the total rent, and then the CPI was allowed to continue. A different way to look at it, Your Honor. But that's not the question. The question is what's the fair market... It was a 25 percent discount on the fair market value of the 20-year period. So this question still is what was the fair market value and what did encompass whatever ought to be encompassed in terms of essentially inflation over that 20-year period. Correct. But then there was a 25 percent discount which was then... The plan was to smooth out the overall nature of the contract over 40 years. During the first 20-year period, how often did you get to adjust the CPI? Was it every 30 months? Every 30 months, Your Honor. Okay. So every 30 months over 240. So is that eight adjustments? Am I math right? Yes, Your Honor. Okay. Eight adjustments. And did you get the maximum 6.25 every time? Yes, Your Honor. Okay. So that would... Which was a cap, by the way. Right. Right. But that's, you know, well in excess of 25 percent. It's about roughly about two percent a year. The interesting fact here, Your Honor, is that at the arbitration, it actually was taken into account. Both sides had their appraisers come in and the issue was did they look at all economic terms or not? Well, no, that's another issue because the arbitrator said, told you that he was looking at all our economic terms. Correct. Correct. And what happened, in fact, was the arbitrator threw out both sides' appraisals, picked his own appraisal number at $750,000 is what it ended up being, and then said, that's the number. That number was never appealed. And that number sets what the minimum rent is. The question then became of how do you start CPI running on that? Does it run... Maybe I'm misunderstanding. I thought it was not how do you start the CPI running, but it was because we all, I gather to be accepted on both sides that it is going to run forward. Correct. So it's not how you start running it, it's whether you add on to whatever the minimum rate was all of the back CPIs. Correct. Correct, Your Honor. Right. So it's not a question of running. Running, it's going to run. That's not the question. Right, but the issue at the lower court was that there was, and the reason the equitable estoppel was made is because the court said, well, it's... So can I ask you why? I know the district judge held that this is an arrest judicata or claim preclusion. Why isn't it claim preclusion, for example? I mean, here you have the arbitrator told you what standard he was applying, and he applied it, i.e., all the economic terms. That's what he decided. I understand that under California law, you can't go and get a different remedy, but you're not looking for... Under California law, a declaratory judgment, the ruling, a legal ruling is binding in any later litigation. It's just that a declaratory judgment doesn't preclude you from getting damages, for example, but the legal ruling is binding. So why isn't that legal ruling about what the fair market value is binding here? Your Honor, that's a fair point, and nobody is contesting what that ruling was. It's sort of apples and oranges. We came into court on deck relief in the second action, saying there's an issue of how CPI applies post-determination of minimum rent. So in other words, it actually doesn't matter what the arbitrator had decided, whether he had decided rent was a million dollars or a dollar. We would still be here today, because the issue becomes how do you apply future CPI onto the minimum rent? Let's go back to what you submitted to the arbitrator the third time. And I have here, it says, the arbitrator will make his decision with regard to the fair market rental value, and I'm talking here about your stipulation for submittal. The fair market value of the premise is payable at the commencement of the option, first option term set forth in the sublease, payable. Didn't you ask the arbitrator to set the amount actually payable, not a component of the amount to be payable? No, Your Honor. Because there were three elements of the contract. There was CPI was one element. Minimum rent was an element. There were two other elements, pass-through rent and additional rent. So minimum rent is actually just a subset of the rent as a whole. Well, what did you mean when you referred, you sign this, the arbitrator will make his premises payable at the commencement of the first option? What did you mean by payable? So what was decided and what was intended was that that is the fair market rental value of the premises was determined to be market rent. So if that answers your question, it is market rent, but then the market rent is subject to additional elements. That wouldn't be the amount payable. The amount payable at the time would be the minimum rent plus whatever add-ons there were. Wouldn't if you're doing a fair evaluation of what that property would rent for today, wouldn't we assume that that would already account for any pass-through rent that been taken on? If I went out there and I wanted to take over this lease and you and I decided to negotiate what the space was worth today, I'm not going to say, oh, well, OK, I think it's going to be worth a million dollars for the year. And you're going to say, yeah, I agree to that. And they say, well, of course, that doesn't include pass-through rent. I've got pass-through rent. Well, what do you mean you've got pass-through rent? That's your problem. Why didn't you already account for that when we negotiated the rent? Well, again, Your Honor, that's exactly right. We never appealed or never contested the finding of what the minimum rent was. We simply asserted that there... Right, but the minimum rent at the time of the renegotiation of this was to be 75% of the commercial value, the commercial valuation of the lease property. You simply disagreed as to how much that commercial valuation was. That's why you're going to go out and get some appraisers. But that commercial valuation should have included any pass-throughs that you had received in the previous years from L.A. And it should have accounted for inflation, including inflation that would be well above the cap of the 6.25 percentage. In other words, you're going to say, you know, when Home Depot says, wow, that's a whole lot more than you charged us 20 years ago. Well, duh, we've had inflation. And now the property is worth a whole lot more. Take it or leave it because we can go and rent it to Lowe's for a really, really, really good price. And I want to reserve a couple of minutes for rebuttal, Your Honor. But yes, that's right. We didn't contest what the market rent was at the time. But I don't understand why you're going to add the CPI. That feels like it's double counting. Your Honor, because that's what the contract calls for. It's in the contract. What paragraph does it call for that? Section 4.3. This is kind of the irony of the whole case, that the issue on summary judgment was that somehow the district court felt that the rent was set artificially high. In fact, in Section 4.3, it very clearly states that the adjustments are made on a rolling 30 basis every 30 months, 30, 60, 90, 120, et cetera. And then it says, and this is important, during the initial term and any option term. So it simply continues through both. And that's what the parties have agreed on. We know that it continues. But the question is, what's the baseline? This is why I keep disputing the way you're presenting this because the problem isn't what's going forward. The problem is what's going, you're trying to take everything from the back into the baseline. It's exactly the opposite in a sense. One of the issues that came up, and this is represented very clearly in the transcript, is that you don't take the minimum rent and then deduct from it future projections of value, whether it's the CPI or any other terms of contract. Who's deducting anything? You're taking the minimum rent and then you're adding the CPI forward, but not backwards. Well, that's exactly right. We've accepted that minimum rent. So you want to add it backwards. No, we don't, Your Honor. I'm sorry. You want to take the minimum rent and put into it all of the, to the, number to the minimum rent, which represents all of the CPIs up to that point. Yes, Your Honor. Backwards. There's two separate issues. There's two separate issues. One, which came up in the estoppel, was because supposedly CPI wasn't addressed, the minimum rent was set too high, which then precludes us from even ever arguing how CPI should be applied in the future. Um, I'm sorry, but you're, am I wrong that there is no argument about how the CPI is to be applied in the future, for the future? Um, Your Honor, there, that is incorrect. That is incorrect? Why? Yes, we, because FCP asserts that going forward, CPI has accrued from, from day one and is simply every 30 months gets recalculated. Home Depot, on the other hand, says there's a total reset to zero at the option term of CPI. So actually, no matter what had been decided at the arbitration, and this is, this is what makes the case interesting, Your Honors. No matter what had been decided, we would still be here today. We would still be in court today arguing about how CPI applies after minimum rent was set, at whatever number it was set. Maybe it was set too high or low. Isn't CPI a way to recalculate fair market value on a 30 month rolling basis? Yes and no, Your Honor. CPI really is a future projection of estimated income and, and increases. And, and so it's a factor that's looked at when you look at the comps, which is what should have happened and what, in fact, did happen at the, at the arbitration. Um, what it isn't is a factor that you take and deduct from the establishment of what minimum rent is or should be. And, and that's where the difficulty came up. And that's where the escalation came up. What was the value of the CPI that you wanted to, uh, add to the minimum rent? About $45,000 a month from the very beginning of the contract. And that represents what kind of a percentage? It's about two, two and a half percent. And, and that's certainly well within what... I'm sorry, that's $45,000 a month? Yes. And that's only... Excuse me, $45,000 for every, yeah, every month. Okay. And $45,000 is how, how much, how much above, uh, what was the minimum rent going to be? What was the baseline on the recalculated minimum, new minimum rent? It was $1,000,000 minus 25%. And that's $1,000,000 a month? Uh, yes. Excuse me, I'm sorry, I'm sorry. It's $1,000,000 a year. Okay. So the, the, the monthly rental was less, excuse me. Okay. So the month, so the monthly rental on, on, uh, was going to be what? About $70,000 or so? Approximately. Something like that? And you're going to add another $45,000 onto that? Yes. Okay. Well, that's not, that's not two and a half percent. That's, that's more like 75%. It's actually, it's added on over 30 months, Your Honor. The 45,000 is added on over 30 months. So it's actually a smaller percentage per month. And was that capped at 6.25%? Yes, it was, Your Honor. So in fact, without the cap, it would have been much, much higher. And so the cap served to kind of even out the rent over time. So all you were asking for was 6.25% above minimum rent? Yes. Okay. Your time is up. We'll give you a minute to rebuttal. Thank you. Thank you. Okay. Good morning, Your Honors. May it please the Court. All of the arguments made by First City on this appeal come down to a single refrain. And that is, they lost in an arbitration that was decided eight years ago. And now they want a second bite at the apple. All right. To me, the question is, what's the legal rubric here, at least to begin with? I'm disquieted with this equitable estoppel idea. Partly because it just doesn't seem like the way you deal with earlier litigation. We have doctrines for that, which are essentially claim and issue preclusion. And secondly, in order to make it work, you have to prove that they intentionally withheld this, right? What's your evidence that they intentionally withheld it? They intentionally withheld it very, very clearly because either they knew about it as they claim all through the time of the lease. They were asked to present the arbitrator with all economic terms. And they didn't do it. They kept it a secret. They... But you have no actual proof of any kind that they had some cabal. They said, we know we're going to keep this back. And then we're going to come in later and claim it. Well, yes, yes, we do. People intend the consequences of their actions. Well, you don't. So this is another way of saying you don't have any such proof. Your Honor, I respectfully disagree. I think that the fact that they claim they knew about it and they didn't present it when they were directed to do it, is itself proof that they intended the consequences of their actions, which, of course, were to get a higher... I don't understand why res judicata simply doesn't apply or claim preclusion. Because in a declaratory judgment action, I look back at the California cases, and at least one of them says this flat out. And of course, it's true. The whole point of a declaratory action is that what isn't preclusive is the remedy. But what is preclusive is whatever the legal ruling was. Your Honor, we agree 100 percent. Why was this complicated by pushing it into some doctrine that doesn't really apply? Well, we... In other words, all we need to know is what the district, what the arbitrator... Is the fact that it's an arbitration have anything to do with the problem? Does that create a problem? No, there's arbitrable preclusion, right? Not only that, Your Honor, but they reduced the arbitration to a judgment, and then they appealed the judgment. There's no question that res judicata applies to arbitration. So... And what was decided in the arbitration was what was the fair market value. Correct. And the, as we've been discussing, is a pretty... The arbitrator already said that it includes all economic terms. That was another legal ruling in the case. And so what he decided, what the issue decided was that all the economic terms in the case and the release taken together result in a fair market value of X. We agree completely. The court, the district court was evidently troubled by the mycogen case. Uh, we do not think that the mycogen case applies. It can't possibly... I mean, the whole point of having a declaratory judgment is to decide the legal question. That's binding, and the case law says it's binding. Of course it's binding. There's a separate statute, apparently, that says it's binding. Well, not only that, Your Honor, but the arbitration, once the stipulation was taken into account, resulted in, um, coercive relief. The arbitrator said, First City, you need to... But now you're undermining yourself, because it doesn't matter, does it? I mean, if I have, if I go to court and I have a declaratory judgment that so-and-so owes me $500, um, now I can't then... I can then go and sue him for the $500, and that's what it means by it not being race judicata, but he can't come back and say, No, I don't owe you $500. I, I agree, and, and Home Depot agrees. And that is the argument we made, uh, and for reasons that are still unclear, the district court, uh, decided not to grant our motion based on race judicata. The court did not explain its ruling. Um, it was a one-sentence, uh, uh, discussion in its first... I think you have a hard road to hoe in the equitable staple, actually, because you have to prove intent, and that's difficult. I mean, they could have been negligent. We don't know. They could have been, and more likely they were. They didn't think of, of, of being specific about it. Uh, all, all I can say about that, Your Honor, is that, um, it was, as, um, uh, Your Honor noted, approximately 75% of the rent they claimed was due. Run through the numbers for me. I, I, I've got some, I've got some numbers, uh, that I worked out. I don't know whether these are accurate, but the, the minimum rent sent by the arbitrator, it was $62,500, is that correct? That's monthly rent. Monthly rent. Okay. That, that monthly rent is good for 30 months, is that correct? Yes. Okay. Okay. So at, at, at that point, do we get to add anything further to that? Do we get to add a, you, are you still going to pay a percentage of your sales? Yes. Okay. So that's still added on. Is there, is there pass through? Yes. Okay. So if, if, if LA, but that was presumably would be anything in the future. So if, if next year LA, LA hit, uh, First City with, with a pass through, they get to, they get to just pass that on to you. Well, it, it, it, it's a percentage. There's a formula for passing that on. Okay. So now with respect to the CPI, your contention is the 60 to five, uh, forget the percentage, forget the pass through that's good for 30 months. And then, and then we, and then we recalculate the CPI capped at 6.25%. Correct. Okay. So is First Cities theory that you have to add another $45,000 and change every month to the 60 to five going forward from this point? Uh, from, uh, February of 2009, which is the arbitration, uh, which is the date, the, uh, first option term, uh, came into force. So you should be paying $108,000 a month instead of 62,000. That is their claim. Uh, to be able to compare apples to apples, the arbitrator directed the parties to submit their appraisals considering all economic terms of the lease. And it was clear that those economic terms... Is, uh, one of the confusions here is that as originally submitted to the arbitrator the first time, CPI didn't seem to be there. Uh, well, the question was, Your Honor, um, do, uh, is, are the parties supposed to take into account 4.4 and 4.5? And what the arbitrator said is, no, you need to take into account all economic terms. Right. And it's... So he answered a slightly different question than what he was asked, but that's sort of irrelevant at this point because when we get to the third arbitration, everybody knew what the ground rules were, i.e. all the economic terms. Yes. But he did somewhat exceed what he was asked the first time. Well, he was asked a question, and a very, uh, narrow question. And he said, uh, well, the answer is, you don't just consider 4.4 and 4.5, but you consider all of the economic terms. Um, in fact, in the, um, uh, request for judicial notice, including, um, the transcript of the hearing, which we think was improper, but the transcript supports Home Depot, not First City. Um, on page 45, the arbitrator says, and so my conclusion will be that with regard to paragraph 4.2 of the sublease, the mutual intent of the parties was, and the appraisers are directed to determine the fair market rental value of the property to be appraised, taking into consideration sums payable as additional rent pursuant to 4.4 and or sums payable as percentage rent pursuant to section 4.5 of the sublease. And then Home Depot said, I was going to say, I wouldn't want, even though we have couched the issue in a narrow fashion, I wouldn't want the appraisers receiving the narrow determination to somehow lead them to conclude that they are not to take into account other factors. And the arbitrator said, taking into consideration all economic terms, including without limitation, sums payable as additional rent and sums payable as percentage rent. So that will be the ruling. And in fact, that's what he ruled. So. But to go back to the numbers or the economic situation, if the CPI had been raised during the arbitration, I gather your contention is that the fair market value would have been lower. Yes. Why? Can you explain that? I wish I could do a good job. I will give it my best. If you have a property and the rent is calculated at, say, $10 for minimum rent and then $5 for these add-ons, say, pass-through rent. So the total economic package is $15. Then you have another property, exact same kind of property, and the value is $10. That's the rent. With no add-on. I'm sorry? Without an add-on. No add-ons. So the average economic package you get for those two properties is, say, $12.50. But the $5 from the add-ons would be taken into account, not necessarily reduced on a dollar for dollar basis, and they went into that, but would be taken into account when you look at what the rent for those properties is, what the fair market value. And so it would be $10 on, or $12.50 on the one property reduced by some factor that takes into account the add-on. I'm not doing a very good job because I can still see the question marks on your faces. No, it's because I haven't been able to do it either. But one thing was clear. I have some intuitive feeling that it must be right, but I can't quite read the numbers on it. The arbitrator clearly understood that, and there was no question that the arbitrator lowered the fair market value when these add-ons were considered. But that's going forward, isn't it? In other words, no one here is disputing that the CPI is going to go forward, right? Not the old CPI, but the new CPI. The consumer price index provision applies... in the first term, and it applies in the option terms. So when he says you have to take into account the fair market value, doesn't he mean going forward? But what does it mean going backwards? It doesn't. So how would it have affected the fair market value to have taken into account the CPI in calculating the fair market value? I mean, the problem with not taking it into account, with taking it into account would seem to be double counting, as we were saying before. Yes, sure. But I don't think it actually would result in a lower fair market value. Uh, if you follow the logic of the arbitrator, as I tried to just do... But I think he was talking going forward. In other words, clearly in figuring out what the fair market value is, you have to know what the rent is accounting for and whether there's other things going into the rent. So if, um, so a lease for X amount plus Y and G has a higher fair rental value at that point than one that doesn't have the X and G, right? So, but I don't know why that, why that deals with the backward rolling in, but it doesn't, I don't know if it matters, but I'm not sure it's true. I'm not sure it's true. I think it's wrong for a different reason is my intuition. But anyway, go ahead. The, the, uh, going backwards is a complete fabrication. It does not follow the terms of the lease. The real point here is First City had its day before the arbitration. It then had its day in court. It then had its day on appeal. And we're now eight years down the road. And whatever theory, whatever legal theory is appropriate, we think precludes them from going forward at this point and rehashing this, uh, a poor, um, uh, CPI provision, fair market rent. Um, there needs to be an end to litigation. There needs to be an end to disputes. That is a, uh, clear mandate, we think, for this court to rule in favor of Home Depot. Okay. Thank you very much. Thank you. I'll give you a minute of rebuttal. Very briefly, Your Honor, in my, my one minute that I have, um, the idea that there's nothing to see here and let's just move along is, is not correct. That's right. I didn't hear that. The idea that there's just nothing to see here and let's move, move it all along in, in favor of finality doesn't really apply. I think the issue here really is that the court is uncomfortable with the fact of, do you add this additional $45,000 after the arbitrated amount was set? Two points to that. One, FCP does not contest, and it did not appeal, in fact, the finding of the arbitrator as to what the minimum rent is. The only issue here is the issue of, do you add CPI going forward to that minimum rent? So the court may or may not... Why do you keep saying it's going forward? It's not going forward. You are trying to take, not the future CPI, but everything that's accumulated for 20 years. Your Honor, the court, the court may or may not be comfortable with that, but the issue is... It's not a question of comfortable. I'm just disputing what you're saying. I understand that. The district court has stopped us from even being able to make that argument. Tell me why this isn't a simple res judicata. I don't understand, because I understand California law. What the statute means is you, when you get a declaratory judgment, that doesn't preclude you from going and getting more relief, but it doesn't authorize you to relitigate what you got the declaratory judgment on. That's the whole point of getting a declaratory judgment. Right. And nobody's trying to relitigate that. That's the point. Well, that's exactly what you're trying to do, because you're trying to say that the... Or at least the contention is that that's what you're trying to do, because the arbitrator calculated the fair market value, telling you that it was going to take into account all the economic terms, and that's what the declaratory judgment was. A, it's taking into account all the declaratory terms. B, this is what the number. And now you're trying to add something to it. At least that's a fair way of looking at it. And I don't know why we're trying to shove it into this equitable estoppel problem. Well, I would agree. I think the issue is absolutely different. So tell me why under California res judicata law you're not precluded. Because under the Micogen case, we just had a simple declaratory judgment in the first case. Correct. Which precludes you, but doesn't allow you to relitigate what you litigated. And that's what they're contending. So, Your Honor, the issue then really becomes a sort of claim preclusion part of res judicata. And these are two separate issues. Setting minimum rent is one issue. How you then add or don't add CPI to it going forward... The issue decided was what is the future rent taking into account all economic terms. No. What was decided at the arbitration is what the present day minimum rent should be. Again, if that minimum rent was set at $1 or $1,000, it would not make any difference at all in terms of res judicata to how you apply CPI after that. I want to make sure I've got the numbers right. Because you left me with some ambiguity when I talked. So the minimum rent that was sent by the arbitrator was $62,500. Is that correct? I guess I'll take that. Per month. Per month. Okay. And the $45,000 and change is the amount that you wanted added each month. Isn't that correct? Yes, Your Honor. Aren't you arguing for $108,000 a month? Yes, Your Honor. And the court has to understand that there are many aspects of the lease that carried forward in that manner. For example, the pass-through provision also carried forward. It was not zeroed out. Nothing was zeroed out. Everything continued. The pass-through provisions continued. That was minimum rent plus pass-through. And it's no different here. It's minimum rent plus CPI. Right. The question is whether you get to add some other factor for CPI in the first month of the renewed lease or whether you have to wait 30 months before you start getting the next and that's why it's not res judicata. Home Depot would argue that you start out with first month at zero. We would argue that you start out at a different number. So that projects into the future and the difference, Your Honor, and this is a lot of equity to put on our shoulders, is a $10 million difference. So you have to look at the minimum rent that was set at the arbitration. We do not both sides appraisals. He looked at the contract himself. He came up with a number that he believed was fair and accurate, which we accepted was not appealed. That number was never appealed. The issue would have always been how do you then, moving forward from that number, tack on the other elements of the lease, pass-through, and in particular here, CPI. And tell me exactly what pass-through is. Pass-through rent is simply an amount of rent that the landlord, which is the city, this is a parcel near the airport, charges to my client. That, under the terms of the contract... And as to that, that was put in retroactively as opposed to prospectively? It is put in, yes, Your Honor. In other words, some number was added to the minimum representing the past pass-throughs. Absolutely, Your Honor, and that's how this lease was supposed to work. There were many elements of the lease that moved forward in time. They weren't zeroed out. The whole argument here is that we should be allowed to go back to the district court... What does it mean, then, to say that all the economic aspects of the lease were going to the fair market value? It seems to me that the pass-through, I mean, I think this is typical of leases, is that if the airport raises the landlord's rent, he can then raise your rent. Correct. Backwards? Yes. You can think of it as different columns. So you take your minimum rent column, you add your pass-through column, you add your CPI column. Nothing is reset to zero. That is the fallacy here, and that's what we're entitled to go back, at a minimum, to the district court to argue. Of course, the difference is that a CPI seems to be pretty connected to the fair market value. Your Honor, the whole idea of looking at all the economic terms is simply looking at them in terms of setting the comps, not in setting the minimum rent itself. The reason we submitted the transcript is because it makes that clear as day. The arbitrator was absolutely focused on what comps you look at. So, yeah, you look at all the factors in doing the comps, but it's not a dollar-for-dollar deduction, and once you set the minimum rent, you simply add on all these other factors to it. That is how the contract was constructed. All of the elements of the contract continue forward, and that's the fundamental disconnect, and that is why there was not a res judicata. There was not a waiver. Those were judicially determined, and there certainly should be a very high level of discomfort with finding an estoppel of an issue that was never intended to be resolved at the arbitration, and that my client should have a right to go back into the district court to get resolved. How does it attach? The finding of minimum rent never resolved that issue. The error of the lower court was in assuming that it did. Okay. Thank you very much. Your time is up. Thank you.
judges: Berzon, Bybee, Woodcock